BOROUGH OF MERCHANTVILLE, RESPONDENT, v. CAMDEN AND SUBURBAN RAILWAY COMPANY AND PUBLIC SERVICE RAILWAY COMPANY, APPELLANT.

Argued November 22, 1920—Decided February 28, 1921.

1. The Public Service Railway Company, the defendant, as the successor in interest to the property and franchises of the Camden and Suburban Railway Company, is liable to the borough of Merchantville for the expenses of paving between the rails and tracks of the company and three feet on each side thereof, for that portion of Maple avenue in the borough west of Centre street. This results from an ordinance passed by the council of the borough on December 18th, 1900, and an agreement with the defendant company, dated November 15th, 1915. For an amplification of the facts and statutes, which lead to this result, see the body of the opinion.

2. A turnpike company cannot stand by and see public work done on the roadbed without objection. This will raise a presumption of consent.

3. A railway company having accepted an ordinance granting permission to lay its tracks on a public highway in its entirety must accept the burdens. It cannot accept the benefits and reject the burdens. This is so, even when the work done by the municipality, from which the obligation arose, was *ultra vires*.

4. A railway company cannot stand by and see public work done for which it may be liable under a resolution, and then raise the question of the propriety of the procedure collaterally, viz., that the work should have been done under an ordinance and not by resolution.

On appeal from the Supreme Court.

For the appellant, *Frank Bergen.*

For the respondent, *Lewis Starr* and *Edward I. Berry.*

The opinion of the court was delivered by

BLACK, J.    The controversy in this case is over the liability of the defendant Public Service Railway Company to pay the borough the expenses of paving between the rails and tracks of the company and three feet on each side thereof, on that portion of Maple avenue, in the borough of Merchant-

ville, west of Centre street. The case was tried by Judge Frank T. Lloyd without a jury, resulting in a judgment for the plaintiff, for the sum of $35,877.56, and a nonsuit in favor of the defendant the Camden and Suburban Railway Company.

The appellant states six grounds of appeal. The second, including error in not finding in favor of the defendant company, by the trial court, on one or more of the fifteen grounds, which the defendant requested the trial court in writing to find in its favor.

The facts, as found by the trial judge, are concisely stated as follows: The borough of Merchantville is surrounded by Pensauken township, Maple avenue extends entirely through the borough. This was part of the Moorestown and Camden Turnpike Company, incorporated under *Pamph. L.* 1849, *p.* 145. The Camden Horse Railroad Company was incorporated under *Pamph. L.* 1866, *p.* 640; *Supp. Pamph. L.* 1868, *p.* 638; *Pamph. L.* 1872, *p.* 512, which authorized the company to build a street railway on the turnpike over Maple avenue, in Merchantville. Then, a lease was made by the Camden Horse Railroad Company to the Camden and Suburban Railway Company, May 1st, 1896. The Moorestown and Camden Turnpike Company was conveyed to the county of Camden November 7th, 1913, under *Pamph. L.* 1905, *p.* 325. Then, by sundry conveyances, the property and franchises of the Camden and Suburban Railway Company became vested in the defendant, Public Service Railway Company. The claim of the borough rests on an ordinance of its council passed December 18th, 1900, and duly accepted by the Camden and Suburban Railway Company, and an agreement dated November 15th, 1915, between the borough and the Public Service Railway Company, but, as the Camden and Suburban Railway Company was not a party to the agreement, a nonsuit was entered in favor of that company. In 1892, the Camden Horse Railroad Company had located and was operating a single-track road with turnouts, in the borough of Merchantville, as far as Centre street. On May 1st, 1896, the Camden Horse Railroad Company leased all its properties to

the Camden and Suburban Railway Company. Early in 1900 the Camden and Suburban Railway Company presented its formal petition to the borough council for leave to double-track the road, and also to extend the whole line to the eastern borough limit, through Maple avenue. The result was the passage and acceptance of the ordinance, December 18th, 1900. Section 6 of this ordinance provides for paving by the company between the rails and between the tracks and for three feet outside the tracks on either side. This appears to have been complied with. Then follows this pertinent and important provision: "And whenever, after five years from the passage of this ordinance, such remaining sections of the Moorestown pike or Maple avenue, not required by this section to be paved by the said the Camden and Surburban Railway Company, shall be paved under the direction and at the expense of said borough from the curb on each side to within three feet of the outermost rails with any improved pavement, the said company shall within sixty days after notice by said council pave between the tracks and between the rails of said railway, and three feet on the outside of both north and south tracks with such other improved pavement' as said borough council shall direct, and shall keep the same in repair under the direction of said borough council, and that in case said railway company shall fail to comply with such notice, the said paving may be done by the said borough council as aforesaid at the expense of said company."

This ordinance was adopted at the instance and on the petition of the company's predecessor in title. It was accepted and acted on by use of the privileges it contains.

The paving involved was not done in strict accordance with the provisions of the ordinance, hence the agreement of November 15th, 1915, was entered into to meet this situation. When the paving was completed the Public Service Railway Company paid the portion east of Centre street, in Merchantville, but contests its obligation to pay for that portion west of Centre street.

The agreement, executed November 15th, 1915, provides that, whereas, there had been certain controversies between

the borough and the company, as to the latter's paving obligations, to facilitate the improvement both borough and company agreed that, so far as the paving is concerned from Centre street eastward, there is no dispute as to the obligation of the company to repave under the ordinance of December 18th, 1900, such paving is to be considered to be done at the expense of the borough. As to the portion west of Centre street, a like stipulation is made, with the reservation that the company denies its obligation under the ordinance. Then follows this language: "When such paving, done in the manner aforesaid, is completed, it shall be deemed to have been done in accordance with the requirements named in section 6 of the aforesaid ordinance."

The portions of the street not falling to the company were then paved, partly at the expense of the borough, of the state and of the county. The part falling to the company was paved by the borough; the bill for the amount expended under the ordinance by the borough for repaving between and along the tracks was forwarded to the company.

The trial court further found the agreement of November 15th, 1915, was the result of long negotiations between the borough and the company. Payment was actually made for a portion; the dispute of liability for the present paving rested wholly on other grounds. The agreement was actually carried out as contemplated by the parties. These were the facts before the trial court.

The appellant now argues that the judgment should be reversed and insists, first, that the Camden Horse Railroad Company, by its charter, had full right to lay an additional track and to extend its tracks to the east line of the borough, subject only to the right of the turnpike company to object.

This is not so, because the company's charter was subject to alteration by the legislature. *Pamph. L.* 1866, *p.* 640, ¶ 13. It was altered by the two acts of the legislature. *Pamph. L.* 1896, *p.* 329; 4 *Comp. Stat.*, *p.* 5040, ¶ 147; *Pamph L.* 1896, *p.* 357; 4 *Comp. Stat.*, *p.* 5045, ¶ 150. See also *Pamph. L.* 1893, *p.* 144; 4 *Comp. Stat.*, *p.* 5017, ¶ 86.

Second, that the borough of Merchantville had no jurisdiction over the turnpike company to grant consent to the location of the street railway tracks thereon or to consent to the use of electricity as a motive power. This cannot be so. If the matter was doubtful before 1896, the two statutes of that year, referred to under the first point, make this legislation applicable to "any street, avenue, highway or other public place in any city, town, township, village or borough of this state."

Third, that the new work could not be done without the consent of the turnpike company, and that this was never given. This is a matter of fact, so treated by the trial judge. The turnpike company stood by and saw the work done without objection. This raises a presumption of consent, if consent was needed. The defendant company is estopped from raising any such matter of defence.

The next insistence is, that the second track west of Centre street was laid under the charter grant. This is not so in fact. It was laid under the authority of the ordinance.

The act (*Pamph. L.* 1893, *p.* 144) prohibited the laying of any tracks without municipal consent, and to that extent altered the charter. Moreover, the company could not ask for permission to extend its line and double-track it throughout the borough, and having received permission to do that thing, as a unit, carry out part, but not all of the scheme. The company having accepted the ordinance in its entirety, it must accept the burdens. It cannot accept the benefits and reject the burdens. *Mayor, &c., of Rutherford* v. *Hudson River Traction Co.,* 73 *N. J. L.* 227.

The next point is, that the act of 1893 (*Pamph. L., p.* 144; 4 *Comp. Stat., p.* 5017) was repealed by a later act of that year (*Pamph. L.* 1893, *p.* 342), which provided that the function of the borough should be limited to a designation of the location of the track or tracks of such street railway company, upon the roadbed of such turnpike company, when the railroad was built on a turnpike. If this be true, then the later act was, in turn, repealed *pro tanto* by the acts of 1896 referred to under point one.

Again, it is urged, that the borough of Merchantville never had jurisdiction over the turnpike prior to its conveyance to the county on November 7th, 1913, and that the borough was expressly prohibited by law from exercising any jurisdiction or control over the roadway of the turnpike.

This is not so. The act (*Pamph. L.* 1905, *p.* 325), authorizing the purchase of turnpikes by boards of freeholders and vesting exclusive control over them by the latter, did not take from the borough the power to consent to or refuse the building or extending a street railroad over the portion of a highway within its limits. It may be that the paving of Maple avenue by the borough was *ultra vires;* but that is no bar to the right of the borough to enforce against the defendant company the obligation it assumed when it accepted the ordinance. *Mayor, &c., of Rutherford* v. *Hudson River Traction Co., supra.* Again, it is said, that the proper method of providing for the paving should have been by ordinance instead of by resolution. But assuming this to be true, the defendant company cannot raise that question collaterally. Moreover, it cannot stand by and see the work done under the resolution and then raise the question of the propriety of the procedure.

Finally, it is said, that the pavement was not laid "under the direction and at the expense of said borough," and, therefore, it is not within the contract contained in the ordinance of December 18th, 1900.

The complete answer to this is, by the stipulation in the agreement of November 15th, 1915, it was agreed that "such paving is to be considered as done under the direction and at the expense of the borough from curb to curb, notwithstanding the above recited facts   *   *   *   in any legal action which may be taken by the borough to enforce payment."

There is no need of extending this discussion further. There is no legal merit in any of the other points raised or argued.

Our conclusion is, finding no error in the record, that the judgment of the Supreme Court be affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Swayze, Trenchard, Parker, Bergen, Kalisch, Black, Katzenbach, White, Heppenheimer, Williams, Taylor, Gardner, Ackerson, JJ. 15.

*For reversal*—None.